Murphy v. Hughes Okay Mr. Murphy, can you raise your thumb if you can hear me? Okay, I'm gonna we're gonna start your time you've reserved some time you haven't reserved any time so you've got five minutes. Sorry, we're not able to hear you, sir. Did you? We're still not able to hear you. Can we try again? Okay. So Mr. Murphy, we're still not able to hear you. We were hearing you fine before the right argument. Can you hear me now? Yes, we sure can. Thank you, sir. You've got five minutes. Okay, well, I'm on the phone. I'm holding the phone. I'll get rid of these. Yes, you're perfect now. You're on it. We sure can, sir. Okay. Okay, let me, excuse me. May it please the court. My name is Christopher Murphy, and I'm representing myself on this appeal. I was arrested for misdemeanor housing code violations and taken to the Chemung County Jail. The judge set my bail at $750, which my girlfriend promptly paid. Barbara, Deputy Gunderman told me your bail is sitting out there. We've got to cut you loose. We're going to cut you loose.  Washburn was running the show, and he was clearly angry about the fuss and commotion Barbara was making about the delay in releasing me. Washburn announced he's not going anywhere. We're not done with him yet. He's going to sit in my jail for a while. Washburn decided to keep me in his jail long enough to subject me to a full-body cavity search, and then amuse his colleagues by making misgesture with his thumb and forefinger about the size of my penis. In Harris, this court characterized strip searches as one of the clearest forms of degradation in Western society. And I think that was the point of the whole exercise. Barbara was not a prisoner in Washburn's jail, so there was nothing he could do to her. But I was Washburn's prisoner, and as long as he kept me sitting in his jail, Washburn wielded absolute power and control over me. What better way to punish a prisoner and let that prisoner know who holds all the power in a jail than to subject that prisoner to the trauma of a full-body cavity search? And if that prisoner happens to be a man, you can insult the injury by publicly disparaging the size of his penis. This would be an entirely different case. Mr. Murphy? Yes, sir. You covered up the camera with your sheet of paper. Oh, I'm sorry. There you go. I'm sorry. Are we okay? Yes. Sorry, Judge Stanton. Okay, thank you. Are we back? We sure hope so. And your time is running, sir. Okay, this would be an entirely different case if there was any possible justification in law for the conduct of these jailers, or if they were well-intentioned and acted in good faith but made some honest mistake about what the law demanded of them. That's not the case here. These jailers intentionally violated my rights and protections under New York law and under the Constitution, and they did so blatantly and purely out of malice and spite. I respect that. Mr. Murphy, if I may ask a question. Yes, ma'am. My understanding is that Mr. Washburn did not specify any details about who gave the order. Is that something that you have attempted to learn during the discovery period for the last three years? Yes, I did, ma'am. Can you explain what that was? I did. I did a lot of interrogatory and document requests for all of that information, and I never got it. And one in particular was this per post one that was on the strip search justification sheet. But I requested that but never got it. So I really don't know who this mystery superior officer is. Are you saying that you specifically requested to know who was the authorizing officer? I don't think I specifically requested that, Judge LaValle. I got a strip search justification sheet and a per post one. I requested that. But the strip search justification sheet on it where it says authorized to watch commander is completely blank. So I assume there was no authorization from the superior officer. But did I hear you say that you've asked for documents and asked for questions and they didn't respond? Yes, ma'am. Okay. And specifically about this strip search. Okay. Is there anything you wanted? Okay. Thank you so much, sir. We appreciate it. We're going to hear from your colleague on the other side. Can you please start off by responding to the fact that he's claiming that he made discovery requests that were unresponded to? Good morning, Your Honor. Yes. Mr. Murphy did interpose discovery responses and interrogatories. We answered those responses and submitted the documentation that we had in response to those interrogatories. Did they say who authorized Washburn? No, Your Honor. They did not. And what are we supposed to infer from the fact that nobody is fessing up to ordering Washburn to do this? Your Honor, we did submit an affidavit on behalf of Mr. Washburn. Now, he indicated that he was the booking and mission officer, so he did not actually perform the strip search, but made a note that it was conducted. But the jail policy is that strip searches, anything beyond a pat search, has to be based on reasonable- So you have a 67-year-old man sitting at a bus stop, and then he's arrested for misdemeanor housing violations. What is the reasonable suspicion for a visual cavity search? Your Honor, he was remanded to the jail's custody by Judge Forrest's order and had to complete the booking process while the strip search justification sheet admittedly did not list the reason for the reasonable suspicion. But I'm asking, what justification could there have been in these circumstances for a strip search, a visual cavity search? Your Honor, the reasonable suspicion that he was hiding contraband or some other danger would have had to- How could he have been hiding contraband if he was picked up at a bus stop? Your Honor- Did he know that he was going to get picked up then? Unclear, Your Honor, but I know that he was picked up. It's unclear whether he was strip searched by the city police that picked him up and then remanded to his custody. But in any event, the jail policy does require reasonable suspicion and- But Judge, we asked again. So I see things like he was picked up at the bus stop, so he didn't know that he was going, so there's no reason he would have had contraband. I see that he was only with one other person for a short period of time. I see that he wasn't in general. He was- Yeah, he was not in general, but he was placed in a cell with another- No, but in addition, I mean, he was being processed simply to be released because his girlfriend was there with the money to bail him out, and there was no need. I mean, yes, the paperwork needed to be completed according to policy, but strip searching is to worry that this person is going to introduce contraband into the premises, into the jail or prison premises. And he was simply being completed to be released because his girlfriend was there with the bail money. Yeah, and to be clear, there was no testimony as to exactly when his girlfriend arrived. I mean, he says that he believes that she arrived before him, but he did not submit an affidavit from her indicating when she arrived to post the bail. Yeah, but before he was strip searched. Your Honor, I don't believe there's any evidence of the exact timing of when the bail was posted. All we know is the date that- Well, no, he was kept waiting. According to Mr. Murphy, but again, Your Honor, he did not submit any affidavit from her indicating that she was actually there waiting. How do you suggest that we evaluate the reasonableness of the search when the justification she doesn't have a reason? Your Honor, because as submitted in the Washburn Affidavit, Purpose 1 indicates that it was directed by a supervising officer. That's back to the question, who was the supervising officer and what are we supposed to infer from the fact that no name has come forward? Even Washburn hasn't even dimed somebody else out to get out of trouble. What are we supposed to infer from that? The supervising officer would have complied with jail policy and would have ordered the strip search based on reasonable suspicion, Your Honor. What is the reasonable suspicion? Admittedly, it was not set out in the justification sheet, but we can- Was there reasonable suspicion? Your Honor, admittedly, because it's not set out in the judge justification sheet, but Judge Gerasi determined that although they did not exist, there was no evidence of exaggerated response. Well, to say it was authorized by a supervising officer doesn't answer the question, was there reasonable suspicion? Well, Your Honor, the officer could not have just ordered it if there was not reasonable suspicion. The policy is- We don't know whether, we don't know that it was ordered by a supervising officer. We know that the officer, Washburn, filled out a form saying, Purpose 1, which means it was authorized by a supervising officer. That doesn't mean it was necessarily authorized by a supervising officer, because he hasn't been identified by anybody, and nor do we know that there was any reasonable suspicion, because no notes were made showing that there was reasonable suspicion. Yes, Your Honor, but the policy does, it's not reasonable suspicion or supervising officer. It's reasonable suspicion in a- You're assuming the policy was followed, and the argument, the claim is that Washburn was angry at him and was punishing him. That's the claim. That's the claim, Your Honor, but again, the- I don't think so, Your Honor, because- Well, there's plenty of evidence supporting it. It's not as if there's no evidence supporting Washburn's anger, Washburn's malice, towards the claim. I would disagree, Your Honor. The only evidence is the appellant's own conclusory statements. There's still evidence, though, isn't there? Yes, Your Honor, but aside from that, there's no evidence of exaggerated response, which is the standard that- That's in the ordinary course of business? That's just normal? That's what you do when you substrate somebody? You block the size of their penis? No, Your Honor, absolutely not, but I think- But it was done here, and why is that not evidence of malice? Well, the verbal statements, I think, as we said in our papers, the verbal statements by themselves, not accompanied by any physical injury. What about a visual cavity search in these circumstances here? Isn't that an exaggerated response? I don't believe so, Your Honor. Again, I understand that the reasonable suspicion was not identified- The reasonable jury could conclude that that was an exaggerated response? I don't think so, Your Honor. Again, because it was based on a supervisor's directive. And we also have evidence that when you talk about the timing, it's not exactly nailed down, but we do have evidence that they made inquiry about saying, my girlfriend is here with the bail money, when are you letting me out? And Washburn said to him, you're not going anywhere. You're staying in my jail cell for a while. Now, why isn't that evidence of malice? Your Honor, I don't think- Again, we don't have the exact timing. We know that it was, at the most, two hours. And under the standards set forth in Lynch, we think that two hours wasn't sufficient to shock the conscience. No, but it's not sufficient to shock the conscience necessarily. But if it's deliberate delay out of malice, simply holding somebody longer than you need to hold them and delaying the paperwork just because this is somebody who you want to show them who's boss, that is not something that's permissible. No, it wouldn't be permissible, Your Honor. But again, I don't think two hours is evidence of a delay through the booking process. I wasn't talking about two hours. I was talking about the evidence of malice and the evidence of intention to hold him in the jail cell. You're not going anywhere for a while. Again- You're staying in my cell. I'm showing you who's boss. He didn't say that. Thank you so much. Thank you, Your Honor. We will take this case under advisement. That concludes the cases on the argued calendar for today. We have one case on submission. For the record, I'll say that it's United States v. Sheltra, and that's 21-2960. I want to thank the clerk and the office and the team that tried to help us through all of these formidable tech challenges. And thank you so much for our court security officers for keeping us safe. I'll ask the clerk to adjourn for today. Court is now adjourned.